# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FREEBIRD, INC., on behalf of itself and others similarly situated,** ) ) ) | |
| **Plaintiff,** ) ) | CIVIL ACTION |
| v. ) ) | No. 10-1154-KHV-JPO |
| **MERIT ENERGY CO. (including predecessors and successors),** ) ) ) | |
| **Defendant.** ) ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff brings putative class action claims to determine the proper method of calculating natural gas royalties under Kansas law and to recover alleged underpayment of royalties. Plaintiff alleges that Merit Energy Co. violated the Kansas implied covenant to market by improperly passing on to plaintiff and class members the costs of processing natural gas and its constituents into marketable condition. Specifically, plaintiff brings three claims: breach of lease (Count I), unjust enrichment (Count II) and accounting (Count III). To remedy these alleged violations, plaintiff seeks money damages, reasonable costs and attorney fees and injunctive relief which prohibits defendant from violating the implied covenant to market. This matter comes before the Court on <u>Plaintiff's Motion For Class Certification</u> (Doc. #19) filed August 30, 2010.

## Legal Standards

Rule 23, Fed. R. Civ. P., governs class certification in federal court. Class certification is committed to the broad discretion of the trial court. See <u>Shook v. El Paso County</u>, 386 F.3d 963, 967 (10th Cir. 2004). In exercising its discretion, the district court should construe Rule 23 liberally and resolve all doubts in favor of class certification. <u>Id.</u> (citing <u>Esplin v. Hirschi</u>, 402 F.2d 94, 99 (10th Cir.

1968), cert. denied, 394 U.S. 928 (1969)). At the class certification stage, the question is not whether plaintiffs have stated a cause of action or will prevail on the merits, but whether they meet the requirements of Rule 23. See Shook, 386 F.3d at 971 (quoting Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982)). In deciding whether the proposed class meets the requirements of Rule 23, the Court accepts plaintiff's substantive allegations as true, but does not blindly rely on conclusory allegations. See Shook, 386 F.3d at 968 (quoting J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999)); Vallario v. Vandehey, 554 F.3d 1259, 1265 (10th Cir. 2009). The Court must conduct a "rigorous analysis" to ensure that plaintiff's putative class meets the requirements of Rule 23. DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1194 (10th Cir. 2010) (quotations and citations omitted). In so doing, it may consider the legal and factual issues in the complaint, but should not prejudge the merits of the case. Id. In general, courts should err on the side of class certification because they have broad discretion to later redefine (or even decertify) the class if necessary. See Esplin, 402 F.2d at 99; Heartland Commc'ns, Inc. v. Sprint Corp., 161 F.R.D. 111, 115 (D. Kan. 1995) (court can tailor class as necessary by eliminating class members, requiring additional class representatives or modifying class definition).

As the party seeking class certification, plaintiff has the burden to prove that its putative class meets the requirements of Rule 23. See Shook I, 386 F.3d at 968; D. Kan. Rule 23.1(d). First, plaintiff must satisfy Rule 23(a) by showing that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) plaintiff's claims or defenses are typical of the claims or defenses of the class and (4) plaintiff will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Plaintiff must also show that its case fits within one of the categories described in Rule 23(b). See Fed. R. Civ. P. 23(b). Here, plaintiff asserts that its case fits

within Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

**Factual Background**

Plaintiff brings suit individually and as a representative of the following proposed class:

> All royalty owners of Merit Energy Co. (or its predecessors and successors) from Kansas wells that have produced gas and/or gas constituents (such as residue gas, natural gas liquids, helium, nitrogen, or condensate) from January 1, 1998 to the present.
>
> Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); (2) Defendant, its affiliates, predecessors, and employees, officers and directors; and (3) Any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, gathering, processing, or marketing.

First Amended Complaint – Class Action (Doc. #15) ¶ 11. Plaintiff alleges that defendant has operated more than 400 gas wells in Kansas and that class members number more than 3,000. Id. ¶ 12.[1]

Plaintiff and putative class members own interests in wells that produce gas and its constituent

---

[1] Plaintiff's Brief In Support Of Motion For Class Certification (Doc. #20) states that these numbers might be higher; that defendant operated roughly 15,000 wells in Kansas during the class period, each of which has one or more royalty owners.

products, including residue gas, natural gas liquids, helium, nitrogen or condensate. See id. ¶ 11. Each class member also has lease and royalty agreements under which defendant extracts gas from the class member's land, sells it and pays the class member a royalty – a percentage of the revenue which defendant receives from the sale, typically one-eighth. See id. ¶ 22. Each class member has separate, and potentially different, lease and royalty agreements. Defendant admits, however, that it calculates each class member's royalty payment the same way even though individual lease and royalty provisions are different. Id. ¶ 14. Specifically, defendant pays royalties based on the net revenue which it receives from selling the gas under its marketing contracts. Id. In general, these contracts provide for a third party to process the gas into marketable condition, i.e. the condition necessary for sale on the open commercial market. Plaintiff's Brief In Support Of Motion For Class Certification (Doc. #20) at 2. Plaintiff does not know the terms of the third-party contracts, but states that defendant sells the gas from class members' wells in two ways: (1) by hiring a third party to gather and process the gas or (2) by selling raw, unmarketable gas to third parties who process and resell the gas. Id. Plaintiff argues that either way, defendant short-changes class members on their royalty payments. Id. Because defendant pays royalties on net proceeds, it passes on to class members a portion of the third-party processing costs. When defendant sells raw, unmarketable gas, it gets a lower price than it would for marketable gas. Also, defendant often does not receive payment for helium or natural gas liquids ("NGLs"). In both instances the class members receive lower royalty payments. See id.

## Analysis

Plaintiff asserts that defendant's method of calculating royalty payments violates the implied covenant to market. It argues that absent an express provision to the contrary, the covenant to market is uniformly implied in all oil and gas leases. The implied covenant to market provides that "the lessee

-4-

has the duty to produce a marketable product, and the lessee alone bears the expense in making the product marketable." Sternberger v. Marathon Oil Co., 257 Kan. 315, 331, 894 P.2d 788, 800 (1995).[2]

To obtain class certification, plaintiffs must show that the prerequisites of Rule 23(a) are satisfied and demonstrate that the proposed class action fits within one of the categories described in Rule 23(b). Here, plaintiff seeks to certify the class under Rule 23(b)(3). Defendant asserts that the putative class does not satisfy either prong of Rule 23 because to determine whether and to what extent the implied covenant applies, each lease must be individually construed based on its language and the circumstances of its execution in order to determine whether and to what extent the implied covenant applies.

## I.     Rule 23(a) Requirements

Under Rule 23(a), plaintiff must show that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) plaintiff's claims or defenses are typical of the claims or defenses of the class and (4) plaintiff will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### A.     Numerosity

Rule 23(a)(1) requires plaintiff to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006).

---

[2]     The Sternberger court further explained the implied covenant to market as follows:

> Once a marketable product is obtained, reasonable costs incurred to transport or enhance the value of the marketable gas may be charged against nonworking interest owners. The lessee has the burden of proving the reasonableness of the costs. Absent a contract providing to the contrary, a nonworking interest owner is not obligated to bear any share of production expense, such as compressing, transporting, and processing, undertaken to transform gas into a marketable product.

Sternberger, 257 Kan. at 331, 894 P.2d at 800.

Plaintiff must therefore produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. See Rex v. Owens ex rel. State of Okla., 585 F.2d 432, 436 (10th Cir. 1978). This is a fact-specific inquiry and the Court has no set formula for determining whether plaintiff meets this requirement. Rex, 585 F.2d at 436; Trevizo, 455 F.3d at 1162. Plaintiff's complaint states that the class includes more than 3,000 members, Doc. #15 ¶ 12, and its brief in support of the motion for class certification states that more than 15,000 members could be involved, Doc. #20 at 6. Defendant does not dispute that plaintiff's proposed class satisfies the numerosity requirement. Plaintiff has therefore satisfied the numerosity requirement of Rule 23(a)(1).

### B. Commonality

Rule 23(a)(2) requires plaintiffs to show that "questions of law or fact are common to the class." Fed. R. Civ. P. 23(a)(2). This inquiry requires the Court to find whether common questions of law or fact exist – not whether they predominate, as Rule 23(b)(3) requires. See Olenhouse v. Commodity Credit Corp., 136 F.R.D. 672, 679 (D. Kan. 1991). The brief in support of plaintiff's motion identifies 11 common issues of fact and law including (1) whether plaintiff and class members are beneficiaries of an implied covenant that obligates defendant to process into marketable condition the gas (and its constituents) from class wells, (2) whether defendant is solely responsible for all costs necessary to render the gas commercially marketable, (3) whether defendant improperly passed on to class members the cost of making their gas commercially marketable and (4) whether defendant has breached its lease agreements with class members. See Doc. #20 at 6-7.[3] Defendant argues that these issues are not truly

---

[3] Plaintiff's brief cites the following common issues of fact and law:

(a) Whether Plaintiff and the Class members are the beneficiaries of an implied covenant obligating Defendant to place the gas (and its constituents) from Class Wells

(continued...)

³(...continued)
into Marketable Condition;

(b) Whether Defendant is solely responsible for all costs necessary to render commercially marketable the gas and constituent parts produced under the oil and gas leases;

(c) Determining the point at which the gas (and its constituents) that Defendant produces becomes commercially marketable;
> (I) Whether Marketable Condition for residue gas occurs at transmission pipeline quality as Plaintiff contends or earlier;
> (ii) Whether Marketable Condition for NGLs occurs at fractionation quality as Plaintiff contends or earlier; and
> (iii) Whether Marketable Condition for helium occurs at Grade A quality as Plaintiff contends or earlier;

(d) Whether Defendant deducted (in cash or in kind) amounts for placing the gas (and its constituents) into Marketable Condition before paying royalty to Plaintiff and the Class members;

(e) Whether Defendant failed to properly pay royalty to Plaintiff and the Class members for all gas constituents, such as condensate and helium, produced from their wells;

(f) Whether Defendant calculated the royalty paid to Plaintiff and the Class according to the internal accounting, royalty payment formulas, and recordkeeping operations of Defendant which are not known to or knowable by the members of the Class;

(g) Whether the check stubs Defendant used in paying royalty to Plaintiff and the Class members misrepresented or fraudulently concealed, by omission, commission or both, the true facts about Defendant's calculation of royalty owed;

(h) Whether Defendant's payment of royalty to Plaintiff and the Class members on a monthly basis is an open account;

(I) Whether Defendant's uniform practice of paying royalties as it does and taking or allowing deductions from royalty payments prior to products being in marketable condition constitute a breach of Defendant's lease obligations to Plaintiff and the Class members;

(j) Whether Kansas law imposes the Conservation Fee on Plaintiff and the Class

(continued...)

common because each lease is unique and must be individually construed based on the language and circumstances surrounding its execution. See Doc. #28 at 5-7.

Defendant does not dispute, however, that it calculated royalty payments for plaintiff and all putative class members the same way. See id. at 10. Plaintiff and class members challenge defendant's royalty payment calculations under the same legal and factual theories – that the implied covenant applies to each lease and that defendant breached it by improperly passing on costs associated with processing their gas into marketable condition. Although determining damages will require individual calculations, that fact does not preclude a finding of commonality. See Sibley v. Sprint Nextel Corp., 254 F.R.D. 662, 673 (D. Kan. 2008). Plaintiff has therefore satisfied the commonality requirement of Rule 23(a)(2). See Sibley, 254 F.R.D. at 673 (formulaic differences among commission agreements do not bear on commonality of class members' claims).

**C.  Typicality**

Rule 23(a)(3) requires plaintiff to show that its claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3); Stricklin, 594 F.3d at 1198. The claims or defenses need not be identical, see id. (citing Anderson, 690 F.2d at 800), but need only be based on the same legal or remedial theory. Class members' different factual circumstances do not defeat typicality. See id. at 1198-99 (citing Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988)); Jamieson v. Vatterott Educ.

---

[3](...continued)
members, and if not, whether Defendant improperly paid royalty owners by the royalty owner's share of the Conservation Fees imposed on Defendant;

(k) Whether Kansas law imposes a severance tax on helium, and if not, whether Defendant improperly deducted a severance tax on helium from royalty owners.

Doc. #20 at 6-7.

-8-

Ctrs., Inc., 259 F.R.D. 520, 547 (D. Kan. 2009).

Plaintiff asserts that its claims are typical of class claims because defendant calculated all royalties the same way and plaintiff and class members have the same legal theory for recovering the underpaid royalties. Doc. #15 ¶ 14. Defendant does not dispute that it calculates royalty payments to plaintiff and each class member in the same way, see Defendant's Response To Plaintiffs' Motion For Class Certification (Doc. #28) at 10, but asserts that plaintiff's claims are not typical of class members claims because of inherent differences between each gas lease and royalty agreement, see id. at 23-24.

To support its typicality argument, defendant relies on Stirman v. Exxon Corp., 280 F.3d 554 (5th Cir. 2002), a Fifth Circuit case which applies Texas law. In Stirman, the Fifth Circuit held that typicality cannot exist in a class action based on an alleged breach of the implied covenant to market where some class members have "proceeds" leases and others have "market value" leases. The Fifth Circuit so held because under Texas law the implied covenant applies only to proceeds leases, not market-value leases. Id. at 562. Kansas law, however, does not make this distinction. Roderick v. XTO, 679 F. Supp. 2d 1287, 1291 (D. Kan. 2010) (under Kansas law, "at the well" gas leases impose general obligation on lessee to render gas marketable and prohibit lessee from passing gathering and production costs on to lessor); Sternberger, 257 Kan. at 331, 894 P.2d at 800 (market value "at the well" case; absent contract to contrary, nonworking interest owner not obligated to bear any share of production expense such as compressing, transporting and processing undertaken to transform gas into marketable product); Robbins v. Chevron U.S.A., Inc., 246 Kan. 125, 131, 785 P.2d 1010, 1014 (Kan. 1990) (proceeds case; implied covenant to market applied).

Here, plaintiff's claims are typical of class members claims because they all entered into gas lease agreements with defendant, they assert the same legal theory to recover royalty payments and they

all suffered the same type of harm. Plaintiff has therefore satisfied the typicality requirement of Rule 23(a)(3).

### D. Adequacy of Class Representation

Rule 23(a)(4) requires plaintiff to show that it "will fairly and adequately protect the interests of the class." To meet this requirement, the representative plaintiff must be a member of the class it seeks to represent and must show that (1) its interests do not conflict with the interests of other class members and (2) it will prosecute the action vigorously through qualified counsel. See E. Tex. Motor Freight Sys., Inc., v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002); Olenhouse, 136 F.R.D. at 680. To defeat class certification, a conflict must be "fundamental" and go to specific issues in controversy; minor conflicts are not enough. Eatinger v. BP Am. Prod. Co., No. 07-1266-EFM, 2010 WL 3023957, at *4 (D. Kan. Aug. 2, 2010) (citing Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003)). A fundamental conflict exists where some class members claim to have been harmed by conduct that benefitted other class members. See id. In such situations, the named representative cannot adequately represent the interests of the class because its interests are actually or potentially antagonistic to or in conflict with the interests and objectives of other class members. See id.

Plaintiff states that it has no conflict of interest with other class members and that, based on their experience handling similar cases, its counsel is qualified. Doc. #20 at 10-11. Defendant does not dispute the adequacy of class representation. Plaintiff has therefore satisfied Rule 23(a)(4).

## II. Rule 23(b) Requirements

Plaintiff asserts that its case falls into Rule 23(b)(3), which provides that "the questions of law or fact common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### A. Predominance

Defendant describes plaintiff's action as a "mass breach of contract action" in which the individual issues dwarf the common issues. See Doc. #28 at 5. As noted, it argues that each lease is a unique agreement that must be individually construed. See id. at 6-7, 13-17. Defendant relies on a number of cases to support its argument. The Court will address each in turn.

Citing Smith v. Amoco Production Co., 272 Kan. 58, 31 P.3d 255 (Kan. 2001), defendant argues that under Kansas law, the implied covenant is implied in fact, not in law. Defendant correctly states that in Smith, the Kansas Supreme Court held that the implied covenant to market is implied in fact and that such covenants are "derived from the written agreement and the circumstances surrounding its execution." Smith, 272 Kan. at 73, 31 P.3d at 267 (quoting 5 Williams & Meyers, Oil & Gas Law § 803) (internal quotation marks omitted). It reached this conclusion, however, in the context of determining which of two statutes of limitation should apply.[4] Moreover, the court cited numerous

---

[4] The Kansas Supreme Court had to determine whether the five-year statute of limitations on written agreements, or the three-year statute of limitations on unwritten but expressed or implied
(continued...)

authorities which state that, except in very narrow circumstances not relevant here, almost no difference exists between a covenant implied in fact, as opposed to a covenant implied in law. See Smith, 272 Kan. at 73-76, 31 P.3d at 266-68. Smith's holding is therefore not dispositive with respect to the question here: whether application of the Kansas implied covenant to market requires a fact-specific inquiry into the language and extrinsic circumstances of each lease. Indeed, when Smith considered the substantive requirements of the implied covenant to market, it simply stated that the "Smith Class correctly points out that in oil and gas leases, lessees are bound by the covenant to market gas." Smith, 272 Kan. at 78, 31 P.3d at 269. In Smith, the Kansas Supreme Court did not consider the language or circumstances surrounding the execution of the lease to determine whether the implied covenant to market applied, nor did it instruct the district court to consider such circumstances on remand. Smith, 272 Kan. at 76-79, 31 P.3d at 268-70. Smith therefore will not bear the weight which defendant places on it.

Defendant argues that under Sternberger, to determine whether the implied covenant to market applies, the Court must look to the language of each lease and whether a market for gas exists at each well head. Sternberger addressed these two factors – lease language and well-head market – but only to determine whether a lessor could pass on to lessees the costs associated with transporting marketable gas to market. See 257 Kan. at 331-32, 894 P.2d at 799-800. According to Sternberger, these costs are not governed by the implied covenant to market. See id. In so holding, Sternberger assumed that the gas was in marketable condition and distinguished pure "transportation" costs from "gathering" and other costs associated with processing the gas into marketable condition. 257 Kan. at 331-32, 894 P.2d

---

[4](...continued)
agreements, applied to the implied covenant to market. See Smith, 272 Kan. at 69, 31 P.3d at 264. Based on its conclusion that the implied covenant to market was implied in fact, it applied the five-year statute of limitations. Smith, 272 Kan. at 60, 31 P.3d at 258.

at 799-800. Here, plaintiff asserts that the gas in question was not, and is not, in marketable condition at the mouth of any well and that defendant improperly passed on to plaintiff and class members the costs associated with processing the gas into marketable condition. See Doc. #20 ¶ 3.[5] Therefore, Sternberger does not apply here. Moreover, without reference to lease language or well-head markets, Sternberger expressly stated that under the implied covenant to market, the "lessee has the duty to produce a marketable product, and the lessee alone bears the expense in making the product marketable." Sternberger, 257 Kan. at 331-32, 894 P.2d at 799-800. It did not rely on a fact-specific inquiry to determine whether the implied covenant to market applied to the lease. See Sternberger, 257 Kan. at 321-22, 894 P.2d at 794-95. Sternberger therefore does not condition the implied covenant to market on the specific lease language or facts and circumstances surrounding the parties' assent to each lease.

Although the Kansas Supreme Court has not expressly held that application of the implied covenant to market does not require a fact specific, lease-by-lease inquiry, its jurisprudence in this area indicates that no such inquiry is required. To determine whether an implied covenant applies, Kansas

---

[5] Plaintiff's third common issue of fact or law states as follows:

(c) Determining the point at which the gas (and its constituents) that Defendant produces becomes commercially marketable;

(I) Whether Marketable Condition for residue gas occurs at transmission pipeline quality as Plaintiff contends or earlier;

(ii) Whether Marketable Condition for NGLs occurs at fractionation quality as Plaintiff contends or earlier;

(iii) Whether Marketable Condition for helium occurs at Grade A quality as plaitniff contends or earlier; . . . .

Doc. #20 ¶ 3(c).

courts do not engage in a fact-specific inquiry into the particular provisions of a gas lease or the circumstances of the parties' assent to the lease. Typically, they simply state that an implied covenant applies, and the parties dispute whether one or the other breached it. Robbins, 246 Kan. at 131, 785 P.2d at 1014 ("We have long held that there is an implied obligation to market oil and gas under a lease agreement. Once oil or gas is discovered in paying quantities, the lessee has an implied obligation to produce and market production diligently."); Vonfeldt v. Hanes, 196 Kan. 719, 722, 414 P.2d 7, 10-11 (1966) (absent express lease provision, implied covenants impose blanket duty on lessee to develop and market gas); Gilmore v. Superior Oil Co., 192 Kan. 388, 392, 388 P.2d 602, 606 (1964) ("Kansas has always recognized the duty of the lessee under an oil and gas lease not only to find if there is oil and gas but to use reasonable diligence in finding a market for the product."). In short, absent an express lease provision to the contrary, Kansas courts seem to presume that implied covenants apply to all oil and gas leases.[6]

Defendant also asserts that under Robbins, plaintiff's claims require the Court to consider whether defendant acted as "an experienced operator of ordinary prudence would . . . under the same or similar circumstances." 246 Kan. at 130-32, 785 P.2d at 1014-15. In Robbins, the Kansas Supreme Court recognized "an implied obligation to market oil and gas under a lease agreement," and held that once "gas is discovered in paying quantities, the lessee has an implied obligation to produce and market production diligently." 246 Kan. at 131, 785 P.2d at 1014. It stated that whether a lessee has performed

---

[6] This approach is particularly striking because it stands in stark contrast to Kansas implied covenant jurisprudence in other areas. Compare Robbins, 246 Kan. at 131, 785 P.2d at 1014 (oil and gas "implied covenant can only be defeated by express language showing a contrary intent") with Williams v. Safeway Stores, Inc., 198 Kan. 331, 424 P.2d 541 (1967) (commercial lease; court meticulously scrutinized lease and implied covenant and stated that "[e]ach case appears to depend largely upon its own facts" and that "to find an implied covenant in a lease a court must first determine the lease is ambiguous or that a conflict exists between two covenants expressed in the lease").

-14-

its duties under an implied covenant is a question of fact based on "what an experienced operator of ordinary prudence would do under the same or similar circumstances." Robbins, 246 Kan. at 131, 785 P.2d at 1015. Plaintiff argues that Robbins does not apply because plaintiff does not contest whether defendant was a prudent operator, but simply alleges that defendant wrongly accounted for royalties after performing its job as a prudent operator. Doc. #31 at 20. Because plaintiff's claim is based only on defendant's calculation of royalties, and not whether it acted as a prudent operator in seeking a market for class members' gas, defendant's reliance on Robbins is inapposite.

Last, defendant argues that Elliott Industries Ltd. Partnership v. BP America Production Co., 407 F.3d 1091 (10th Cir. 2005) is controlling and requires the Court to conclude that individual issues will predominate over common issues. In Elliott, the Tenth Circuit reversed the district court class certification order because it lacked subject matter jurisdiction. See id. at 1106. Defendant primarily relies on footnote dicta in Elliott in which the Court noted that "pleading a breach of contract claim on behalf of approximately 10,000 royalty owners would have made class certification less likely." Id. at 1107. It also cites portions of Elliott in which the Tenth Circuit, applying New Mexico law, stated that, even if the contract terms are unambiguous, the application of an implied covenant turns on evidence of the circumstances under which the parties entered the contract, trade usage and course of dealing. As plaintiff notes, however, Kansas courts, unlike New Mexico courts, have found no need to look to extrinsic evidence to imply the covenant to market.

Because Kansas Supreme Court jurisprudence in this area indicates that the implied covenant to market applies to all gas leases irrespective of the unique circumstances that give rise to the lease, absent an express provision to the contrary, the Court rejects defendant's argument that individual issues will predominate over common issues. In addition, plaintiff asserts that it can prove defendant's liability

-15-

to the class through common evidence. See Doc. #20 at 20-21. Plaintiff therefore has established that its case falls within Rule 23(b)(3).[7]

---

[7] In reaching this conclusion, the Court expresses no opinion with respect to the merits of the case, but simply notes that application of the Kansas implied covenant to market does not require a fact-specific inquiry that would predominate over common issues. Nor does the Court rely on the Supplemental Support For Plaintiff's Motion For Class Certification (Doc. #32), which plaintiff filed without leave of Court and does not comply with D. Kan. Rule 15.1.

This conclusion is consistent with a recent decision of this court. See Eatinger, 2010 WL 3023957 (certifying class in nearly identical implied covenant to market case). It is also consistent with a recent decision by the Kansas Court of Appeals. See Farrar v. Mobil Oil Corp., 43 Kan. App.2d 871, 234 P.3d 19 (2010). In Farrar, the Kansas Court of Appeals addressed legal arguments very similar to those which the parties press here. Specifically, in Farrar, Mobil argued that the district court improperly certified plaintiffs' class because individual issues would predominate over common questions of law or fact. Id. at 884, 234 P.3d at 28. Mobil's argument was rooted in its assertion that determining whether it had breached the implied covenant to market would require evaluating each lease individually as well as the factual circumstances and intent of the parties at the time they executed each lease. Id. The Kansas Court of Appeals rejected Mobil's arguments. Id. at 890, 234 P.3d at 31. It noted that "[n]o owner of a Kansas royalty interest has been required to prove a specific intent to include an implied covenant in an oil and gas lease, and that Smith does not change this." Id. at 886, 234 P.3d at 29 ("Indeed, one need not examine parole evidence, surrounding circumstances, or extant industry practice to determine such covenants should be implied. This has simply never been the law or practice in Kansas."). The Court of Appeals concluded as follows:

> [I]n a purported class action claiming improper calculation of royalties, there is no need to examine individual lease formation and the intent of the parties thereto for purposes of determining predominance of common issues or manageability in certification proceedings where there has been shown a systemic common course of conduct by an oil and gas lessee in calculating royalties payable. We agree with the district court and its rationale in rejecting Mobil's argument that a need for individualized examination of lease formation and language defeats predominance of common issues or otherwise renders this case unmanageable as a class action.

Id. Although federal courts are not bound by decisions of state intermediate appellate courts when applying state law in a diversity case, Farrar is not contrary to any Kansas Supreme Court decision and the Court sees no reason to believe that the Kansas Supreme Court would adopt defendant's proposed rule, which appears to conflict with the court's historical application of the implied covenant to market. See Grynberg v. Total, S.A., 538 F.3d 1336, 1354 (10th Cir. 2008) (citing state intermediate appellate court decision, noting no conflict with state supreme court decision and no reason to believe such court would adopt different rule).

The District Court for the District of Colorado also reached a similar conclusion under
(continued...)

**B. Superiority**

Plaintiff argues that a class action is the only way to resolve this dispute for all class members because the small size of the typical class member's claim makes individual actions impractical. Doc. #20 at 23. It also argues that bringing thousands of cases to resolve the same questions would be inefficient and costly. Id. at 22. Defendant argues that plaintiff has not met its burden of establishing superiority because it does not present facts to support its assertions. Doc. #28 at 25. It further argues that the individual issues which plaintiff raises would make this "mass contract" class action untenable. Doc. #28 at 25-26. When determining whether to certify a class, the Court accepts plaintiff's substantive allegations as true. See Shook, 386 F.3d at 968. The Court therefore concludes that, for the reasons which plaintiff stated in its motion, a class action would be superior to individual actions. See also Schreiber v. Nat'l Collegiate Athletic Ass'n, 167 F.R.D. 169, 173 (D. Kan. 1996) (case particularly suited for class action treatment where cost of litigation makes separate claims economically unfeasible).

Although the parties do not squarely address the four factors laid out in Rule 23(b)(3), none of them dissuade the Court from certifying plaintiff's proposed class. Plaintiff therefore has satisfied the requirements of Rule 23(b)(3).[8]

---

[7](...continued)
Colorado law, which imposes an implied covenant to market similar to that imposed by Kansas law. See Anderson v. Merit Energy Co., Nos. 07-cv-00916-LTB, 07-cv-01025-LTB-BNB, 2008 WL 2484187 (D. Colo. 2008) (variations in language of royalty payment provisions relevant only where express provision addresses post-production costs; court may not consider extrinsic evidence to determine applicability of implied covenant); see also Roderick v. XTO Energy, Inc., 679 F. Supp.2d 1287, 1291 (D. Kan. 2010) (careful review of decisions from Kansas, Colorado and Oklahoma establishes that all three states impose general obligation on lessee to render gas marketable, and hold that such expenses may not be charged to lessors).

[8] The class members seem to have no overriding interest in individually controlling the prosecution of separate actions. Indeed, it appears that separation actions would not be economically
(continued...)

## III.    Scope of Class

While defendant does not contest the scope of plaintiff's proposed class, it appears that the class may need to be narrowed at a later date. Plaintiff admits that under Kansas law the implied covenant to market may be waived by express language in the lease agreement, but it does not carve out of its class any lessors whose leases contain such a provision. Doc. #15 ¶ 11; Doc. #20 at 21; see also Robbins, 246 Kan. at 131, 785 P.2d at 1014. Defendant states that language in some leases may expressly negate or modify the implied covenant. Doc. #28 at 24. At this early stage of litigation, however, it is not important that the class exclude persons who have not suffered harm – unless, of course, all or most of the potential class members have no claims to be asserted by the class representatives. Sibley, 254 F.R.D. at 671. That situation does not appear on this record. In the future, if it appears that plaintiff's class definition is too broad, it can be narrowed. See Esplin, 402 F.2d at 99 (courts favor certifying class in light of broad power to redefine or decertify class at later stage); Sibley, 254 F.R.D. at 670 (same).

## IV.    Appointment Of Counsel

Rule 23(g) requires that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g). In appointing counsel the Court must consider counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, (3) knowledge of the applicable law and (4) resources. Fed. R. Civ. P. 23(g)(1)(A). Here, plaintiff's counsel, who are members of the Gunderson, Sharp & Walke, L.L.P. law firm, have taken all class

---

[8](...continued)
feasible. In addition, the record does not suggest that class members have already begun litigating these issues separately or that concentrating the litigation in this forum would be undesirable. Finally, the Court is not aware of any extraordinary difficulties in managing this class action.

certification depositions, conducted all discovery, prepared and filed all motions and briefs for plaintiffs and the class, and have appeared and argued at all hearings. The firm and its lawyers have been involved in several class action cases, including similar gas royalty class actions. Defendant does not oppose plaintiff's counsel as class counsel. Upon reviewing the record the Court is satisfied that Gunderson, Sharp & Walke, L.L.P. will adequately represent the interests of the class as counsel and that the standards of Rule 23(g) have been satisfied.

**V.    Notice**

Rule 23(c)(2)(B) requires that for any class certified under Rule 23(b)(3), the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Court believes that the overwhelming majority of class members (if not all class members) can be identified through reasonable efforts. To that end, defendant is directed to provide to plaintiff, on or before January 21, 2011, the names, addresses and any other relevant contact information of all royalty owners of Merit Energy Co. (or its predecessors and successors) from Kansas wells that have produced gas and/or gas constituents (such as residue gas, natural gas liquids, helium, nitrogen, or condensate) from January 1, 1998 to the present. Plaintiff shall then prepare and submit to the Court for approval, on or before January 28, 2011, an order that complies with Rule 23(c).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Class Certification (Doc. #19) filed August 30, 2010 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that **on or before January 21, 2011**, defendant shall provide to plaintiff the names, addresses and any other relevant contact information of all royalty owners of Merit Energy Co. (or its predecessors and successors) from Kansas wells that have produced gas and/or

gas constituents (such as residue gas, natural gas liquids, helium, nitrogen, or condensate) from January 1, 1998 to the present.

**IT IS FURTHER ORDERED** that **on or before January 28, 2011**, plaintiff shall submit to the Court for approval an order that complies with Rule 23(c).

Dated this 4th day of January, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil

KATHRYN H. VRATIL
United States District Judge
