## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FREEBIRD, INC., on behalf of itself and )
others similarly situated, )
                                    )
               **Plaintiff,** )
                                    )      **CIVIL ACTION**
**v.** )
                                      )      **No. 10-1154-KHV**
**MERIT ENERGY CO. (including** )
**predecessors and successors),** )
                                    )
              **Defendant.** )
_____ )

## MEMORANDUM AND ORDER

Freebird, Inc. brings class action claims on behalf of royalty owners in Kansas to determine the proper method of calculating natural gas royalties under Kansas law, and to recover alleged underpayment of royalties. It alleges that Merit Energy Co. violated the Kansas implied covenant to market by improperly passing on to plaintiff and class members the costs of processing natural gas and its constituents into marketable condition. Plaintiff brings three claims: breach of lease (Count I), unjust enrichment (Count II) and accounting (Count III). Plaintiff seeks money damages, reasonable costs and attorney fees and injunctive relief. This matter is before the Court on Defendant's Motion For Partial Summary Judgment Regarding The Applicable Statute Of Limitations (Doc. #79) filed March 1, 2012.

With limited exclusions, the Court has certified a class consisting of "[a]ll royalty owners of Merit Energy Co. (or its predecessors and successors) from Kansas wells that have produced gas and/or gas constituents (such as residue gas, natural gas liquids, helium, nitrogen, or condensate) from January 1, 1998 to the present." Based on a five-year statute of limitations, defendant argues that plaintiff's claims should be limited to royalty payments made on or after September 10, 2003 – five years before plaintiff filed suit. Plaintiff counters that the five-year statute of limitations does not limit its claims

because (1) royalty payment agreements create "open accounts" that toll the statute of limitations, (2) fraudulent concealment tolls the statute of limitations and (3) under the discovery rule, plaintiff's unjust enrichment claim did not accrue until after September 10, 2003. Because these arguments are without merit, the Court sustains defendant's motion.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment

if the nonmoving party's evidence is merely colorable or is not significantly probative.  <u>Liberty Lobby</u>,

477 U.S. at 250-51.  In response to a motion for summary judgment, a party cannot rely on ignorance

of facts, on speculation or on suspicion, and may not escape summary judgment in the mere hope that

something will turn up at trial.  <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988).  The heart of

the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the

factfinder or whether it is so one-sided that one party must prevail as a matter of law."  <u>Liberty Lobby</u>,

477 U.S. at 251-52.

**<u>Facts</u>**

The following facts are either uncontroverted, deemed admitted or construed in the light most

favorable to plaintiff, the nonmovant.

Plaintiff filed suit on September 10, 2008 in the District Court of Seward County, Kansas.

Defendant removed the case to this Court, which certified a class of "[a]ll royalty owners of Merit

Energy Co. (or its predecessors and successors) from Kansas wells that have produced gas and/or gas

constituents (such as residue gas, natural gas liquids, helium, nitrogen, or condensate) from January 1,

1998 to the present."[1]  <u>Memorandum And Order</u> (Doc. #33) filed January 4, 2011 at 3.

Plaintiff and each class member have written lease and royalty agreements under which

defendant extracts gas from the class member's land, sells it and pays the class member a royalty – a

percentage of the revenue which defendant receives from the sale.  The leases require defendant to pay

royalties in regular intervals (generally monthly), except where the amount is considered an "excluded

---

[1]      The class excludes (1) the Mineral Management Service (Indian tribes and the United States); (2) defendant, its affiliates, predecessors, employees, officers and directors; and (3) any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, gathering, processing or marketing.

payment" under K.S.A. § 55-1614(i).  In such case, defendant pays royalties in conformance with the statute.

Check stubs show the amount of royalties that defendant has paid each royalty owner.  Before July of 2005, the monthly check stub showed "Price," "Gross Quantity" and "Gross Value."  The price is an index price, plus or minus a small negotiated fee.  Gross quantity is the volume on sales statements from defendant's purchasers.  Some gas may be lost or used in getting the gas to the purchaser.  Gross value is the price times the gross quantity.

Plaintiff contends that these terms are misleading.  It asserts that "Price" is really a back-calculated net price based on each gas contract, and that "Gross Quantity" does not include certain gases or gas constituents which defendant uses as in-kind partial payments for gathering, compression, dehydration, treatment and processing services.  Check stubs do not reflect in-kind payments and do not state how defendant has determined volume.  The only deductions mentioned on the check stubs before July of 2005 were "DF," i.e. "distribution fee" and "PT," i.e. "production tax."  The distribution fee could include compression, gathering and/or transportation, but defendant never explained this to the royalty owners.  Defendant also did not explain to royalty owners that the production tax combined the Kansas Severance Tax and the Kansas Conservation Fee.  Plaintiff therefore argues that defendant has consistently underpaid royalties.

In July of 2005, defendant changed its revenue accounting software.  Check stubs after July of 2005 still show "Price," "Gross Quantity" and "Gross Value," and they are calculated the same way as before July of 2005.  The deductions, however, are split into three categories: "Gross Tax," "Gross Transp." and "Gross Deducts."  Although not defined on the stub itself, "Gross Tax" combines the Kansas Severance Tax and Kansas Conservation Fee.  The check stub does not define "Gross Transp.,"

which is a transportation deduction, or "Gross Deducts.," which is everything else. The check stubs after July of 2005 state that "[d]eductions may include compression, processing, gathering, transportation or other marketing fees where applicable." When the check stub reflects a deduction category, however, a royalty owner has no way of knowing from the check stub what exactly the deduction is for.

Before September 10, 2003, defendant did not disclose to royalty owners that it was deducting the costs of gathering, compression, dehydration, treatment or processing ("GCDTP") services, or that it allowed volumetric deductions under its gas contracts with third parties. These deductions were lumped together and taken in the aggregate from the "Price" or "Gross Quantity" shown on the check stub. Even where a check stub indicated that a certain category of deduction had been applied (e.g. "DF"), it did not explain what exactly the deduction was for.

Sometimes defendant deducted the cost of GCDTP services directly; other times it hired third parties to perform the services, deduct the GCDTP costs and remit to defendant a net value. These gas contracts were negotiated without input from the royalty owners. Royalty owners would not have been able to see the gas contracts because the contracts are confidential. Having entered into the gas contracts, defendant knew that the cost of GCDTP services was being deducted from the gross product price, that it was deducting the same costs from royalty owners and that royalty owners did not know about the deductions.

Defendant's royalty payments are subject to prior period adjustments. Defendant can adjust present royalty payments to account for adjustments or corrections to payments made months or even years earlier. If defendant overpays a royalty, it carries a negative balance on the account and applies new royalty revenue against the balance until it is paid.

**Analysis**

The question before the Court is whether the five-year statute of limitations in K.S.A. § 60-511 limits plaintiff's claims to royalty payments made after September 10, 2003.[2]  The parties agree that the five-year statute of limitations applies to plaintiff's claims.  See Defendant's Brief In Support Of Motion For Partial Summary Judgment Re: Statute Of Limitations (Doc. #79-1) filed March 1, 2012 at 4; Plaintiff Class's Brief In Opposition To Defendant's Motion For Partial Summary Judgment Re Statute Of Limitations (Doc. #102) filed April 2, 2012 at 7; see also K.S.A. § 60-511(1) ("action upon any agreement, contract or promise in writing" shall be brought within five years); Smith v. Amoco Prod. Co., 272 Kan. 58, 60, 69-76, 31 P.3d 255, 258, 264-68 (2001) (five-year statute of limitations under Section 60-511 applied to breach of implied covenants in oil and gas lease).  Defendant characterizes the leases as "continuing contracts," which "generally accrue[] at the time each payment becomes due, thus giving rise to a separate cause of action for each failure to make payment when due."  Rupe v. Triton Oil & Gas Corp., 806 F. Supp. 1495, 1498 (D. Kan. 1992) (gas purchase contract was continuing contract under Kansas law).  Plaintiff does not disagree.

Defendant contends that plaintiff's claims based on royalty payments before September 10, 2003 are time-barred because irrespective of plaintiff's knowledge or any actual injury, a cause of action for breach of contract accrues upon breach of the contract by failure to do a thing agreed to.  See Defendant's Brief (Doc. #79-1) at 4, 6 (quoting Pizel v. Zuspann, 247 Kan. 54, 74, 795 P.2d 42, 54 (1990)).  Plaintiff fundamentally disagrees that traditional contract law principles apply to oil and gas

---

[2]       A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits, including the statutes of limitations.  See Miller v. Armstrong World Indus., Inc., 949 F.2d 1088, 1089 n.3 (10th Cir. 1991).  Both parties assume that Kansas limitations law applies.

leases, which are a mixture of real property and contract. Plaintiff contends that the five-year statute of limitations does not apply because (1) royalty payment agreements create "open accounts" that toll the statute of limitations, (2) defendant's fraudulent concealment of its royalty payment calculations tolls the statute of limitations and (3) under the discovery rule, its unjust enrichment claim did not accrue until after September 10, 2003.

## I.        Open Accounts

Plaintiff contends that defendant's monthly payments to royalty owners constitute open accounts that toll the statute of limitations. Because Kansas has "no statute specifically defining and governing such accounts" for limitations purposes, the Court "must glean a definition from the general drift of the authorities," including the few Kansas Supreme Court precedents on the subject. Spencer v. Sowers, 118 Kan. 259, 234 P. 972, 973 (1925). The parties agree that

> [a] mutual, open, current account may be defined as an account usually and properly kept in writing wherein are set down by express or implied agreement of the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account, and where pursuant to the original, express, or implied intention there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one part or the other as the balance shall indicate at the time of settlement or following the last pertinent entry of the account.

Id. The parties disagree, however, on whether defendant's royalty payments meet this definition.

Plaintiff argues that Wortman v. Sun Oil Co., 236 Kan. 266, 271-72, 690 P.2d 385, 390-91 (1984), vacated on other grounds, 474 U.S. 806 (1985), implicitly held that royalty accounts are open accounts that toll the statute of limitations until the lessee (here, defendant) makes final payment. Thus a suit is timely, according to plaintiffs, if brought within five years of the royalty account closing. See

id. at 271, 690 P.2d at 390.  In Wortman, mineral leasehold owners (a.k.a. royalty owners) sued Sun Oil

Company for interest on gas royalties that Sun Oil held in suspension for a period of time while price

increases were appealed.  Id. at 266-67, 690 P.2d at 387-88.

On several occasions during the 1960s and 1970s, the Federal Power Commission ("FPC")

allowed Sun Oil to increase the rates which it charged for natural gas produced from the royalty owners'

wells.  Id. at 267, 690 P.2d at 388.  Due to prolonged administrative proceedings and appeals related to

the rate increases, Sun Oil started charging higher rates but did not increase its royalty payments to the

royalty owners until more than a year later.  Id. at 267-68, 270, 690 P.3d at 388, 390.  Sun Oil charged

higher rates from July of 1974 to April of 1976, but did not increase royalty payments until July of 1976,

when it made a lump-sum payment to account for the higher rates.  Id.  It also charged higher rates from

December of 1976 to April of 1978, but did not increase royalty payments until April of 1978.

Wortman, 236 Kan. at 267-68, 270, 690 P.3d at 388, 390.

On August 30, 1979, royalty owners brought an unjust enrichment claim against Sun Oil for

interest on the royalties during the time Sun Oil held the royalty increases in suspension.  Id. at 266-67,

690 P.2d at 387-88.  Sun Oil argued that a three-year statute of limitations barred the royalty owners'

claims for interest on royalties paid in July of 1976.  Id. at 270-71, 690 P.3d at 390.  The royalty owners

countered that because Sun Oil paid each royalty owner monthly for his or her share of gas produced,

the payments were not one-time transactions, but open accounts.  Id. at 271, 690 P.3d at 390.

The Kansas Supreme Court held that the transactions between Sun and the royalty owners

pertaining to interest on suspended royalty were not "a mutual, open, running account."  Id. at 272, 690

P.2d at 391.  Specifically, it held that because Sun Oil's payment in July of 1976 should first be applied

to interest due the royalty owners, the remaining amounts which plaintiffs sought were actually unpaid

royalties – not interest.  Id.  Sun Oil's obligation to pay royalties arose from written leases with the royalty owners, so the Kansas Supreme Court held that a five-year statute of limitation applied.  Because Sun Oil's single payment in July of 1976 fell within the five-year statute of limitations for written contracts, the royalty owners' claims for unpaid royalties were not time-barred.  Id.

Wortman did not address whether successive and ongoing royalty payments, like the ones at issue here, constitute an open account.  Instead it dealt with a single royalty payment which Sun Oil owed because it had suspended royalty payments that had accumulated over time.  Importantly, the royalty owners in Wortman did not contend that Sun Oil repeatedly breached its royalty agreements by suspending a portion of royalty payments.  Rather, they argued that Sun Oil breached its royalty agreements by not paying suspended royalty plus interest in July of 1976.  Thus Wortman has little if any bearing on whether defendant's ongoing obligation to pay royalties in this case constitutes an open account for purposes of the statute of limitations.

Defendant argues that the royalty agreements are not open accounts for three reasons: (1) its obligation to pay royalties does not consist of a connected series of reciprocal charges and allowances – each month it pays the entire amount of the royalty due based on the amount of gas received; (2) each payment is independent of all others; and (3) defendant has no right to "settle and close" plaintiff's account.  First, defendant argues that its royalty payments to plaintiff are not open accounts because "all items of indebtedness are on one side."  Defendant's Brief (Doc. #79-1) at 9 (citing Yeager v. Nat'l Coop Refinery Ass'n, 205 Kan. 504, 510, 470 P.2d 797, 801 (1970)).  In part, Spencer defines an open account as an "account . . . kept open and subject to a shifting balance, as additional related entries of debits and credits are made thereto, until it shall suit the convenience of either party to settle and close the account."  118 Kan. 259, 234 P. at 973.  Where "the items of asserted indebtedness are all on one

side; the account does not have the character of an open running account so far as the statute of limitations is concerned." Yeager, 205 Kan. at 510, 470 P.2d at 801 (citing Spencer, 118 Kan. 259, 234 P. 972) (general agreement that where items of account all on one side, account does not have character of open account for purpose of statute of limitations).

Plaintiff argues that Yeager does not apply because it is factually distinguishable. Even though Yeager is different from this case, it provides an accurate summary of the open account rule in Spencer, which plaintiff agrees applies in this case. See Spencer, 118 Kan. 259, 234 P. at 973; Plaintiff's Brief (Doc. #102) at 9. The one-sided, non-reciprocal nature of the agreement therefore weighs against finding that the royalty payments form open accounts. See Spencer, 118 Kan. 259, 234 P. at 801; see also Plaintiff's Brief (Doc. #102) at 10-11 n.6 (conceding "one-sided, non-mutual" nature of the contract, but nonetheless arguing equitable tolling).

Second, defendant argues that it makes monthly payments in full and that the individual payments are independent of each other. Plaintiff has shown, however, that defendant corrects monthly royalty payments based on "prior period adjustments." For example, defendant would pay the royalty owner in May for revenue from gas sold in April. But after that payment, the purchaser could give defendant a revised payment based on what the purchaser should have paid defendant for the gas. Based on the revision, defendant would make an adjustment to its royalty payment – either backing out the overage or adding in the shortage. See Bower Depo. at 299. Plaintiff contends that these adjustments make the royalty payments an open account. The fact that defendant has made prior period adjustments to royalty payments shows that the payments are not always final.

Defendant does not address the effect of its "prior period adjustments" on the independence of each royalty payment. Instead it argues that each payment is necessarily separate because under Kansas

law the lease and royalty agreements are "continuing contracts," which "generally accrue[] at the time each payment becomes due, thus giving rise to a separate cause of action for each failure to make payment when due." Rupe, 806 F. Supp. at 1498. Plaintiff does not contest defendant's characterization of the lease and royalty agreements as continuing contracts. The Court agrees that it would be odd to consider the royalty payments independent under the continuing contract rule (which effectively softens the statute of limitations), yet consider them interrelated when determining whether the payments constitute open accounts for purposes of applying the statute of limitations. This weighs in favor of finding that the royalty payments do not form open accounts.

Third, defendant argues that the nature of its obligations to plaintiff prevent it from settling and closing plaintiff's account at its convenience. An open "account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account." Spencer, 118 Kan. 259, 234 P. at 801. Plaintiff has not produced any evidence that at their convenience, either party could cancel the lease and royalty agreement. This factor weighs against finding that defendant's royalty payments constitute open accounts.

The very essence of open accounts weighs heavily against treating defendant's royalty payments as open accounts for the purpose of tolling the statute of limitations. As plaintiff notes, lease and royalty agreements "go[] on for generations." Plaintiff's Brief (Doc. #102) at 11. Yet liability on an open account is fixed on "one party or the other as the balance shall indicate at the time of settlement or following the last pertinent entry of the account." Spencer, 118 Kan. 259, 234 P. at 801. Thus the "statute of limitations does not run against each item separately, but only against the balance due," and "commences to run from the time the last item is rightfully credited to the party against whom the

-11-

balance is due." Sheldon Grain & Feed Co. v. Schuetz, 207 Kan. 108, 109, 483 P.2d 1033, 1035 (1971).

Transactions on an open account therefore "draw after them items beyond that period." Id.  If each

royalty payment was part of an open account, the statute of limitations would be tolled for generations.

Moreover, defendant pays royalties on a monthly basis based on production from plaintiff's

wells in a particular month.  This does not reflect "single and individual liability arising from [a] series

of related and reciprocal debits and credits," Spencer, 118 Kan. 259, 234 P. at 801, such as "when a

merchant sells merchandise to a customer and extends credit on the sales," Sheldon Grain & Feed, 207

Kan. at 113, 483 P.2d at 1037.  The record does not suggest that the parties intended to treat the royalty

payments as open accounts.  See Spencer, 118 Kan. 259, 234 P. at 801 (emphasizing importance of

parties' "original, express, or implied intention" to create "but one single and indivisible liability . . .

from such series of related and reciprocal debits and credits"); see also Sheldon Grain & Feed, 207 Kan.

108, 483 P.2d 1033 (parties did not consider or treat multiple purchases as separate individual

transactions); Sacher v. Paige, 149 Kan. 662, 88 P.2d 1013 (1939) (parties' course of dealing showed

mutual understanding of open account).  Therefore, as a matter of law, defendant's royalty payments

do not constitute open accounts.

## II.    Fraudulent Concealment

Plaintiff argues that fraudulent concealment or equitable tolling tolls the statute of limitations

on breach of lease claims involving mineral interests.  Defendant contends, however, that Kansas law

has long held that fraudulent concealment does not toll the statute of limitations on a breach of contract

claim.  See Atchison, Topeka & Santa Fe Ry. Co. v. Atchison Grain Co., 68 Kan. 585, 75 P. 1051

(1904).  In Atchison Grain Co., the Kansas Supreme Court held that fraudulent concealment tolls the

statute of limitations on fraud claims only – it does not toll the time for filing a breach of contract claim.

68 Kan. 585, 75 P. at 1053.  The Kansas Supreme Court found that while there may be strong reasons for making an exception to the statute of limitations "where there is concealment of a cause of action, or where the element of fraud enters somewhat into the breach of the contract upon which an action is brought," the legislature "did not deem it wise to make such exception, but, on the other hand, positively declared that concealed fraud shall operate to toll the statute in the single action brought for relief on the ground of fraud."  Id.

The statute of limitations at issue in Atchison is substantially similar to the statute at issue here, K.S.A. § 60-511.  Section 60-511 states that "[a]n action upon any agreement, contract or promise in writing" "shall be brought within five (5) years."  It does not provide any exception to the five-year period.  Atchison stressed that "the court cannot imply or create exceptions additional to those specifically provided in the statute," particularly since the legislature expressly created a fraudulent concealment exception to the statute of limitation on fraud claims.  Id., 75 P. at 1052.  To do so would "in effect, amend the Code."  Id.  The statutory fraudulent concealment exception currently states that an action for relief on the ground of fraud "shall be brought within two years . . . but the cause of action shall not be deemed to have accrued until the fraud is discovered."  K.S.A. § 60-513(a)(3).  This provision is substantially similar to the statute of limitation on fraud claims considered in Atchison.  See Atchison, 68 Kan. 585, 75 P. at 1052.  The fact that the legislature made such an exception in cases of fraud "is strong evidence that no other or greater one was intended" and that "having mentioned one exception, all others were intended by the Legislature to be excluded."  Id.

The Kansas Supreme Court has subsequently reiterated that "fraud and concealment toll the running of the statute of limitations only when relief is sought on the ground of fraud"; that "concealment [is not] one of the grounds for tolling the statute of limitations"; and that "[c]oncealment

-13-

does not toll the statute of limitations for an action founded on contract." McCoy v. Wesley Hosp. & Nurse Training Sch., 188 Kan. 325, 331-32, 362 P.2d 841, 847 (1961).  This rule, "[h]arsh as [it] may seem, . . . has been firmly established" in Kansas.  Id. at 332, 362 P.2d at 847.

Plaintiff contends that this statement of the law "no longer appears to be true." Baker v. Bd. of Regents of Kansas, 991 F.2d 628, 633 (10th Cir. 1993).  It argues that concealment of a cause of action can toll the statute of limitations on breach of oil and gas lease claims if "the concealment [is] fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there [is] something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." Id. (quoting Friends Univ. v. W.R. Grace & Co., 227 Kan. 559, 564, 608 P.2d 936, 941 (1980)) (internal quotation marks omitted).  Friends University, which plaintiff argues changed Kansas law on tolling the statute of limitations based on fraudulent concealment, stated as follows:

> There must be some actual artifice to prevent knowledge of the fact, some affirmative act of concealment, or some misrepresentation to exclude suspicion and prevent injury.
>
> Although mere silence or failure to disclose may not in itself constitute fraudulent concealment, any statement, word, or act which tends to the suppression of the truth renders the concealment fraudulent. In such cases, by adding to the original fraud affirmative efforts to divert, mislead, or prevent discovery, a continuing character is given to the original act which deprives it of the protection of the statute until discovery. Where some affirmative act of concealment takes place, it is not material whether the concealment was previous or subsequent to the accruing of the cause of action.  The question is whether there was a design to prevent the discovery of the facts which gave rise to the action, and whether the act operated as a means of concealment.

Friends Univ., 227 Kan. at 564, 608 P.2d at 941 (quoting  51 Am. Jur.2d § 148, pp. 719-21) (internal quotation marks omitted).

More recently, however, the Kansas Supreme Court has reiterated that fraudulent concealment "only tolls the time in which a fraud action may be filed if the plaitniff's claim for relief is validly grounded in fraud on its face." Bonin v. Vannaman, 261 Kan. 199, 207, 929 P.2d 754, 762 (1996)

-14-

(citing McCoy, 188 Kan. at 331, 362 P.2d at 846-47) ("fraudulent concealment cannot exist in this case" since plaintiff did not have valid claim for fraud). Although the Kansas Supreme Court has not been entirely consistent in applying the fraudulent concealment doctrine to toll the statute of limitations, it has repeatedly and most recently held that it only tolls the statute of limitations on fraud claims. Bonin, 261 Kan. at 207, 929 P.2d at 762; McCoy, 188 Kan. at 331, 362 P.2d at 846-47; Atchison Grain Co., 68 Kan. 585, 75 P. at 1052-53. Plaintiff's claims are for breach of lease, unjust enrichment and accounting, but not fraud. Therefore the fraudulent concealment tolling doctrine does not toll the five-year statute of limitations on plaintiff's claims.

Even if the fraudulent concealment tolling doctrine did apply, "[t]here must be some actual artifice to prevent knowledge of the fact, some affirmative act of concealment, or some misrepresentation to exclude suspicion and prevent injury." Friends Univ., 227 Kan. at 564, 608 P.2d at 941. Although "any statement, word, or act which tends to the suppression of the truth renders the concealment fraudulent," mere silence or failure to disclose does not by itself constitute fraudulent concealment. Id. The question is whether there was "a design to prevent the discovery of the facts which gave rise to the action, and whether the act operated as a means of concealment." Id. Although defendant's check stubs did not show in-kind or cash processing or gathering fees, plaintiff has not raised a genuine issue of material fact with respect to whether defendant fraudulently or intentionally employed some actual artifice to prevent plaintiff from knowing how it calculated royalty payments. See Friends Univ., 227 Kan. at 564, 608 P.2d at 941. Furthermore, as discussed below, even if plaintiff did raise a genuine issue of material fact with respect to defendant's intent, plaintiff has not shown that due diligence could not have led it to discover the claims at issue. See id. (party seeking to toll statute of limitations must explain why due diligence did not lead or could not have led to discovery of cause

of action).

Under principles of equitable estoppel, the "mere fact of remaining silent, when possessing material knowledge not held by another is sufficient to toll the statute where that silence causes another to fail to take timely action which he would have taken had he possessed such knowledge." Baker, 991 F.2d at 633 (quoting  Ferrell v. Ferrell, 11 Kan. App.2d 228, 234, 719 P.2d 1, 5 (1986)) (internal quotation marks omitted).  A "party need not have planned or contrived with the deliberate intent to lull the opposing party into a false sense of security." Ferrell, 11 Kan. App.2d at 234, 719 P.2d at 5 (quoting Coffey v. Stephens, 3 Kan. App.2d 596, 600-01, 599 P.2d 310, 313 (1979) (internal quotation marks and alteration omitted).  But that does not relieve the party seeking to toll the statute of limitations of its obligation to explain why due diligence did not lead or could not have led to the discovery of the facts and cause of action. See Miller v. Foulston, Siefkin, Powers & Eberhardt, 246 Kan. 450, 470, 790 P.2d 404, 417 (1990); see also Friends Univ., 227 Kan. at 564, 608 P.2d at 941 (quoting Am. Jur.2d § 148, pp. 719-21).

Thus, to survive summary judgment plaintiff must raise a genuine issue of material fact with respect to whether the exercise of reasonable diligence could have led it to discover the claims at issue. Plaintiff claims that by paying royalties based on gross product value minus contractual volumetric and monetary deductions, i.e. "netback" value instead of gross value, defendant has underpaid gas royalties and knowingly retained a benefit that justly belongs to each royalty owner. Pretrial Order (Doc. #130) at 7.  It contends that defendant did not disclose that it was deducting the costs of gathering, compression, dehydration, treatment or processing services, or that it allowed volumetric deductions under its gas contracts with third parties.

Defendant's check stubs before July of 2005 show that defendant determined royalty owners'

-16-

shares by deducting a "distribution fee" from the gross value.  See Doc. #102-3.  In the sample check stub attached to plaintiff's brief, the defendant deducted a distribution fee every month.  Id.  The fee averaged more than five per cent of the owner's total value (i.e. value before deductions) each month.  See id.  The check stubs did not describe the distribution fee, but the fee included compression, gathering and/or transportation costs.  Lee Depo. at 49-50.  The check stubs, however, did not reflect any in-kind or cash processing fee or gathering fee.  Id. at 87-88.

Even though defendant's check stubs did not include all information which plaintiff claims was relevant, plaintiff has not shown that due diligence could not have led it to discover the facts which gave rise to its causes of action.  Friends Univ., 227 Kan. At 565, 608 P.2d at 942.  Kansas law specifically gives royalty owners a right to detailed information about their leases, the wells on their land and their royalty payments, including "the amount and purpose of any other deductions or adjustments from the royalty owner's share of the sale of oil and gas not identified on the payment statement."  K.S.A. § 55-1622(a)(5).  Upon written request from a royalty owner, "the payor shall provide" such information within 60 days.  Id. § 55-1622(a).  If the payor does not have the requested information, it is required to provide the name and address of the lessee of the gas lease or operator of the gas production unit.  Id. § 55-1622(c).  Plaintiff has not produced evidence that raises a genuine issue of material fact whether, exercising due diligence under K.S.A. § 55-1622, it could not have discovered the facts that give rise to this cause of action.

Plaintiff attempts to characterize its relationship with defendant as a fiduciary one, but it provides no justification for extending the fiduciary duties that govern joint venturers in oil and gas ventures to royalty owners and lessees.  The Court therefore finds no basis to hold defendant to the higher standards that apply to fiduciaries.  In addition, plaintiff's reliance on the law of other states is

-17-

inappropriate in light of the contrary Kansas law discussed above.  For all of these reasons, fraudulent concealment and equitable tolling do not toll the five-year statute of limitations on plaintiff's claims.

### III.    Discovery Rule

As a general rule, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises.  Estate of Draper v. Bank of Am., N.A., 288 Kan. 510, 534, 205 P.3d 698, 715 (2009) (citing Pancake House, Inc. v. Richmond, 239 Kan. 83, 87, 716 P.2d 575, 579 (1986)).  That is, as soon as all of the elements of the cause of action are present.  Id.  Plaintiff argues that the discovery rule applies to its unjust enrichment claim.  The elements of that claim are that (1) plaintiff conferred a benefit on defendant; (2) defendant appreciated or knew of the benefit; and (3) defendant accepted or retained the benefit under such circumstances as to make it inequitable for defendant to retain the benefit without paying for it.  Haz-Mat Response v. Certified Waste Servs. Ltd., 259 Kan. 166, 177, 910 P.2d 839, 847 (1996).

Under the so-called "discovery rule," a "cause of action . . . accrues when the fact of injury becomes reasonably ascertainable to the injured party."  See K.S.A. § 60-513(b); N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 630 (10th Cir. 2008) (citing Dreiling v. Davis, 38 Kan. App.2d 997, 1002, 176 P.3d 197, 201 (2008) (describing § 60-513(b) as the discovery rule)).  Plaintiff contends that the discovery rule applies to its unjust enrichment claim, delaying the accrual of that claim until some unspecified time within the last five years.

It is not clear whether the discovery rule applies to unjust enrichment claims.  See N. Natural Gas Co., 526 F.3d at 630.  Section 60-513(b) provides that certain causes of action

> shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall

an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

The statute expressly applies this discovery rule to seven different types of actions including trespass, fraud and wrongful death, but not unjust enrichment.  See K.S.A. § 60-513(a).  The Tenth Circuit recently noted that it could not find any authority to support parties' assumption that the discovery rule applies to unjust enrichment claims, N. Natural Gas Co., 526 F.3d at 630, and plaintiff has not cited such authority here.

Plaintiff relies exclusively on Leathers v. Leathers, No. 08-1213-WEB, 2010 WL 1936137, at *17-18 (D. Kan. May 13, 2010).  That case, however, did not turn on application of the discovery rule and did not hold that the discovery rule applied to unjust enrichment claims.  See Leathers, 2010 WL 1936137, at *18.  Whether the statute of limitations barred the unjust enrichment claim in Leathers turned on application of the general rule of accrual – not the discovery rule exception.  Specifically, it turned on the time at which all of elements of unjust enrichment were present.  See id.

The facts of Leathers are somewhat complicated.  Suffice it to say that Ronald Leathers brought an unjust enrichment claim against Michael Leathers.  See id. at *15.  Michael Leathers sought summary judgment, arguing that a claim for unjust enrichment was untimely under the applicable statute of limitations.  See id.  The Court observed that in Northern Natural Gas Co., the Tenth Circuit had recently found no authority for applying the discovery rule to delay the accrual of unjust enrichment claims, but noted that the Tenth Circuit assumed for the sake of the appeal that the discovery rule applied.  Leathers, 2010 WL 1936137, at *17 (citing N. Natural Gas Co., 526 F.3d 626).  The Tenth Circuit did so because it did not make a difference in that case – the claim was untimely even under the discovery rule.  N. Natural Gas Co., 526 F.3d at 630.

In Leathers, "the fact of injury was reasonably ascertained in 2002."  Leathers, 2010 WL

1936137, at *18.  The Court held, however, that "the statute of limitations could not begin to run until Michael had knowledge or appreciation of the [benefit], which a trier of fact could find to be January 2006." Id. (emphasis added).  That is, the unjust enrichment claim did not accrue until all three elements of the claim were present, and the second element of the unjust enrichment claim was that Michael Leathers knew of or appreciated the benefit plaintiff conferred on him.  See id. at *15 (citing Haz-Mat Response, Inc., 259 Kan. at 177, 910 P.2d at 847) (Michael Leathers became aware that he may have received benefit in December of 2006).[3]  Based on an accrual date in January of 2006, the Court found that the statute of limitations did not bar the unjust enrichment claim by Ronald Leathers.  See id. at *18. Leathers did not hold that the discovery rule applied to unjust enrichment claims.  See id. Rather, based on longstanding Kansas case law, it held that a cause of action does not accrue until all elements of the claim are present.  See id.

Without any authority to support applying the discovery rule to plaintiff's unjust enrichment claim, the Court declines to do so – particularly given the reluctance of Kansas courts to soften statutes of limitations by interpreting them to include provisions not expressly contained in the statutes.  See McCoy, 188 Kan. at 331-32, 362 P.2d at 847; Atchison Grain Co., 68 Kan. 585, 75 P. at 1052-53.  The question remains, however, when did plaintiff's unjust enrichment claim accrue?  Plaintiff does not contend that defendant first appreciated or knew that it was underpaying royalties within the last five years.  Instead plaintiff contends that all along, defendant knew it was underpaying royalties.  The five-year statute of limitations therefore cuts off any unjust enrichment claim that accrued before September

---

[3]    Leathers does not explain the discrepancy between its finding that Michael Leathers became aware that he had received a benefit in December of 2006, and its subsequent finding that Michael Leathers knew of or appreciated the benefit in January of 2006.  The discrepancy, however, is not material to the holding.

-20-

10, 2003.

**IT IS THEREFORE ORDERED** that  Defendant's Motion For Partial Summary Judgment

Regarding the Applicable Statute Of Limitations (Doc. #79) filed March 1, 2012 be and hereby is

**SUSTAINED**.  Plaintiff's claims are limited to royalty payments defendant made to plaintiff after

September 10, 2003, i.e. five years before plaintiff filed suit.

Dated this 1st day of August, 2012 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge