IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FREEBIRD, INC., on behalf of itself and others similarly situated, ) ) ) **Plaintiff,** ) ) ) **v.** ) ) ) MERIT ENERGY CO. (including predecessors and successors), ) ) ) ) **Defendant.** ) _____ ) | CIVIL ACTION No. 10-1154-KHV |

**MEMORANDUM AND ORDER**

Freebird, Inc. brings class action claims on behalf of royalty owners contesting the method by which Merit Energy Co. calculates natural gas royalties. Freebird alleges that Merit Energy Co. violated the Kansas implied covenant to market by improperly passing on to plaintiff the costs of processing natural gas and its constituents into marketable condition. It seeks to recover underpayment of royalties under three theories: breach of lease (Count I), unjust enrichment (Count II) and accounting (Count III). Plaintiff seeks money damages, costs and attorney fees and injunctive relief.

On January 4, 2011, before the parties settled, the Court certified a class consisting of "[a]ll royalty owners of Merit Energy Co. (or its predecessors and successors) from Kansas wells that have produced gas and/or gas constituents (such as residue gas, natural gas liquids, helium, nitrogen, or condensate) from January 1, 1998 to the present." Memorandum And Order (Doc. #33). On October 8, 2012, the parties informed the Court that they had reached a settlement agreement in principle. On December 6, 2012, the Court certified a substantially similar settlement class consisting of "All Royalty owners of Merit from Kansas wells that have produced Natural Gas,

Helium, and Liquids from January 1, 1998 to February 7, 2011." Memorandum And Order (Doc. #197). Both classes excluded (1) the Mineral Management Service (Indian tribes and the United States); (2) Merit, and any of its employees, officers or directors; and (3) any NYSE or NASDAQ listed company engaged in oil and gas exploration, gathering, processing, or marketing. Id.; Memorandum And Order (Doc. #33).

On December 17, 2012, pursuant to a Court-approved direct mail notice plan, the class action administrator mailed class notices to 3,735 individuals and entities identified by defense counsel as potential class members. The class action administrator received 352 notice packages returned as undeliverable. The administrator was able to locate current addresses for 146 of these, leaving 206 undeliverable notices. Merit's Status Report In Support Of Motion For Final Approval Of Settlement Agreement (Doc. #204) filed March 11, 2013 at 2. The deadline for opting out of the class or objecting to the settlement was February 1, 2013. As of the deadline, class counsel had not received any opt-outs and no class members had filed objections. Notice Of No Opt-Outs And No Objections To Proposed Class Action Settlement (Doc. #202) filed February 5, 2013.

This matter is before the Court on two motions: Plaintiff Class's Motion For (1) Final Approval Of Class Settlement; (2) Approval Of The Plan Of Allocation; And (3) Approval Of Incentive Fee Award To Class Representative (Doc. #200) filed January 15, 2013 and Plaintiff's Motion For Award Of Attorney's Fees (Doc. #14) filed January 4, 2013. No opposition or objections have been filed. On March 18, 2013, the Court held a fairness hearing regarding plaintiff's motions. For the following reasons, the Court sustains plaintiff's motions.

## **Analysis**

As noted, the Court certified a substantially similar class before the parties agreed to settle.

Memorandum And Order (Doc. #33).  And later it preliminarily certified the very class that is before the Court now.  Memorandum And Order (Doc. #197).  For substantially the same reasons stated in those orders, and for the reasons stated below, the Court now grants final approval to the settlement class.  It also grants final approval to the parties' proposed plan of distribution, which the Court considered when it preliminarily approved the settlement agreement.  The Court has thoroughly scrutinized the proposed class and proposed settlement agreement.  Because the Court has already preliminarily approved the class and settlement agreement, and because no class member has objected to the settlement, the Court's discussion will be brief.  It will not rehash factual and procedural background or findings sufficiently explained in previous orders.

## I.     Final Settlement Class Certification

Under Rule 23(a) and (b)(3), Fed. R. Civ. P., for the reasons stated in the Court's two previous orders certifying the same or similar class, the Court sustains plaintiff's request for final certification of the settlement class defined as follows:

> All Royalty owners of Merit from Kansas wells that have produced Natural Gas, Helium, and Liquids from January 1, 1998 to February 7, 2011.
>
> Excluded from the Class are: (1) the Mineral Management Service (n/k/a ONRR) (Indian tribes and the United States); (2) Merit and its employees, officers, and directors; and (3) Any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, gathering, processing, or marketing. The Settlement Class also does not include the Prior Opt-Outs listed on Exhibit A to the Settlement Agreement.

See Memorandum And Order (Doc. #197) at 4-6; Memorandum And Order (Doc. #33) at 5-17.

## II.    Final Approval Of Proposed Settlement Agreement And Plan Of Distribution

Under Rule 23(e), the Court must approve the settlement, compromise or dismissal of certified class claims.  The Court may approve a settlement and a plan of distribution upon finding

that it is fair, reasonable and adequate.  See Fed. R. Civ. P. 23(e)(2); Law v. Nat'l Collegiate Athletic Ass'n, 108 F. Supp.2d 1193, 1196 (D. Kan. 2000) (standard for approving plan of distribution same as for approval of settlement as whole).  For the reasons stated in the Court's order preliminarily approving the settlement agreement and plaintiff's memorandum in support of its motion, the Court approves the settlement agreement and plan of allocation as fair and reasonable. The Tenth Circuit's four fairness factors all weigh in favor of approving the settlement: (1) the settlement is the product of fair and honest negotiations between adverse parties; (2) the parties have aggressively litigated this case, and as evidenced by the five cross-motions for partial summary judgment that the parties have filed and fully briefed, serious questions remain; (3) the value of the settlement outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) counsel for both parties attest that they believe the settlement is fair and reasonable.  See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002) (listing four fairness factors); see also Memorandum And Order (Doc. #197) at 7-10 (preliminarily approving settlement).

The fully executed settlement agreement provides that (1) defendant will pay $7,750,000 for past claims and the right to pay future royalties in accordance with the settlement agreement; (2) defendant will pay all costs of settlement notice and administration and distribution of the settlement fund; (3) defendant will pay a reasonable incentive award to named plaintiff, up to .6 per cent of the fund, i.e. $48,923.45; and (4) defendant has stopped deducting conservation fees from its royalty payments.  In return for defendant's performance, the settlement class members will amend their leases to allow payment of future royalties in accordance with the settlement agreement and release all settled claims, including any claims for underpayment of royalties.

The fund will be distributed to class members on a pro rata basis according to past royalty payments. Each class member's share of the settlement fund is determined by calculating that class member's total payments as a fraction of all settlement class members' total payments. The allocation formula discounts payments made before September 1, 2003 by 50 per cent based on the Court's order that claims for those payments are barred by the statute of limitations.[1]  See Memorandum And Order (Doc. #161) filed August 1, 2012.

Under the agreement, defendant will calculate and pay future royalties based on 105 per cent of the following amounts: (1) with respect to sales occurring at the custody transfer meter, all monies which defendant receives from the sale to third-party buyers/processors of natural gas, helium and liquids, including sale of unprocessed natural gas, helium, and liquids, or (2) with respect to sales occurring downstream of the custody transfer meter, all monies which defendant receives from the

---

[1] The allocation formula is: "$A = [((B \div 2) + C) \div ((D \div 2) + E)] * F$"; where:

A= Allocated share to the Settlement Class Member
B = the amount paid by Merit to the Settlement Class Member during the period from January 1, 1998 through August 31, 2003 on the production of Natural Gas, Helium and Liquids
C = the amount paid by Merit to the Settlement Class Member during the period from September 1, 2003 through December 31, 2012 on the production of Natural Gas, Helium and Liquids
D = All amounts paid by Merit to all Settlement Class Members during the period from January 1, 1998 through August 31, 2003.
E = All amounts paid by Merit to all Settlement Class Members during the period from September 1, 2003 through December 31, 2012.
F = Net Settlement Class Fund

Plan Of Administration And Distribution, attached as Ex. 2 to Plaintiff Class's Memorandum In Support Of Motion For Final Approval Of Class Settlement And For Approval Of Plan Administration And Distribution (Doc. #201). Plaintiff's plan of distribution includes additional details regarding the distribution of settlement funds including heirship notification, timing and method of distribution, etc. Id.

sale to third-party buyers/processors of natural gas, helium and liquids, including sale of processed or unprocessed natural gas, helium and liquids, less all third-party costs (including volumetric shrink) incurred between the custody transfer meter and the points of sale.[2]  Defendant's royalty payments will be subject to appropriate withholdings for severance and/or ad valorem taxes, but will not otherwise be subject to reductions or deductions.

The estimated total value of the settlement is $8,153,908, which includes the $7,750,000 settlement payment, cost of class notice and claims administration valued at $100,000 and the estimated present value of the change in the way defendant will calculate future royalties valued at $393,908.  The parties have no agreement regarding the payment of attorney fees or expenses, but plaintiff has asked the Court to approve a fee award of $2,567,452.59, which is 31 per cent of the estimated total value of the settlement ($8,153,908), or one-third of the estimated total value of the settlement, net of expenses.  Plaintiff also asks the Court to award class counsel $461,677.73 in litigation expenses.[3]

The plan of distribution is reasonable because it reimburses class members based on the type and extent of their injuries, and it comports with settlement allocations approved in other royalty

---

[2] For example, if defendant sells natural gas, helium and liquids produced from Well ABC at the custody transfer meter to a third-party purchaser and receives sales proceeds in the amount of $100, and if Settlement Class Member XYZ has a 12.5 per cent (0.125) royalty interest in Well ABC, then defendant will calculate its Well ABC royalty based on a value of $105 and make a royalty payment to Settlement Class Member XYZ in the amount of $13.125 ($105.00 x 0.125).

[3] As of January 15, 2013, plaintiff's counsel had incurred at least $461,677.73 in out-of-pocket expenses and costs.  Plaintiff Class's Memorandum In Support Of Motion For Approval Of Attorney's Fees And Expenses, And Incentive Award (Doc. #199) filed January 15, 2013 at 21.  Plaintiff stated that at or before the fairness hearing it would provide the Court the exact amount of litigation expenses its counsel ultimately incurred.  Id. at 21, 24.  Because plaintiff has not updated the amount of litigation expenses that its counsel has incurred, the Court considers $461,677.73 to be the total amount of litigation expenses that plaintiff's counsel seek.

cases. See Law, 108 F. Supp.2d at 1196; Hershey v. ExxonMobil Oil Corp., No. 07-1300-JTM, 2012 WL 5306260, at *3 (D. Kan. Oct. 26, 2012) (approving similar settlement agreement).

### III. Notice Plan

The Court has reviewed plaintiff's execution of the Court-approved notice plan. For the reasons stated in its order approving the notice plan with certain changes, the Court finds that the notice satisfied Rule 23(e), Fed. R. Civ. P., and due process requirements. See Memorandum And Order (Doc. #197) at 10-12.

### IV. Attorney Fees, Litigation Expenses And Costs, Named Representative Incentive Award

Under Rule 23(h), Fed. R. Civ. P., and D. Kan. Rule 54.2(e), plaintiff class counsel seek an award of attorney fees and expenses. Plaintiff requests (1) a fee award of $2,567,452.59, which is 31 per cent of the total value of the settlement ($8,153,908); (2) litigation expenses up to $461,677.73; and (3) a class representative incentive award of .6 per cent of the total settlement fund (or $48,923.45).

#### A. Attorney Fees

In diversity cases, attorney fees are a substantive matter controlled by state law. Combs v. Shelter Mut. Ins. Co., 551 F.3d 991, 1001 (10th Cir. 2008). Under Kansas law, an attorney who recovers a common fund in a class action has the right to recover a reasonable fee from the fund as a whole. Gigot v. Cities Serv. Oil Co., 241 Kan. 304, 313, 737 P.2d 18, 24 (1987); Freebird, Inc. v. Cimarex Energy Co., 46 Kan. App.2d 631, 641, 264 P.3d 500, 508 (2011). The Court has broad authority over the fees to be awarded in class actions. Law v. Nat'l Collegiate Athletic Ass'n, 4 Fed. Appx. 749, 751 (10th Cir. 2001); Shutts v. Phillips Petroleum Co., 235 Kan. 195, 223, 679 P.2d 1159, 1182 (1984), aff'd in part, rev'd in part on other grounds, 472 U.S. 797 (1985). The Kansas

Supreme Court has adopted the following factors that guide the Court's discretion in determining whether the requested attorney fee is reasonable:

   (1)   the number of hours spent on the case by the attorney and how those hours were spent;
   (2)   the reasonable hourly rate for the attorney;
   (3)   the contingent nature of success;
   (4)   whether the attorney's quality of work should increase or decrease the amount that the attorney should be reasonably entitled to;
   (5)   the amount involved, which determines the client's risk and the attorney's responsibility;
   (6)   the result of the case, which determines the true benefit to the client; and
   (7)   the benefit that the lawsuit produced.

Freebird, 46 Kan. App.2d at 641, 264 P.3d at 508 (summarizing factors listed in Shutts, 235 Kan. at 223, 679 P.2d at 1182); see also Kansas Rules of Professional Conduct ("KRPC") 1.5(a)(1)-(8) (adopting Shutts factors).

The Court finds that an award of of $2,567,452.59, which is 31 per cent of the total value of the settlement ($8,153,908), is consistent with awards in similar Kansas litigation and is reasonable in this case. This case involved complex claims regarding the implied covenant to market in Kansas gas leases. The case required special knowledge of the Kansas gas industry and Kansas law. The law firm of Gunderson, Sharpe, Walke, LLP took this case on a contingent fee basis knowing that it posed a complex uphill battle. As of January 15, 2013, class counsel has spent more than $461,677.73 out of pocket to litigate this case, and spent more than 3,175 attorney hours. The extensive briefing on motions for class certification and summary judgment indicate the complexity of this case. The Court has reviewed these papers and finds that counsel have invested extensive time, effort and expertise in this case to achieve the settlement now before the Court. The benefit of the settlement, valued at more than $8 million, is undeniable. The contingent fee nature of the representation also supports the requested award. By its nature, such representation shifts the

risk of loss from plaintiff to plaintiff's counsel. Only counsel with substantial experience in such complex royalty litigation could have produced such a successful result.

Considering all the Shutts and KRPC factors, the Court finds that an award of $2,567,452.59, which is 31 per cent of the total value of the settlement ($8,153,908), is reasonable and appropriate. See Hershey, 2012 WL 5306260, at *7-8 (approving attorney fee of one-third of total settlement amount in similar royalty underpayment case); Eatinger v. BP Am. Prod. Co., No. 07-1266-EFM (D. Kan.) (Order Approving Settlement Agreement, Awarding Fees And Expenses To Class Counsel, And Awarding Incentive (Doc. #375) filed September 17, 2012 at 10-15) (same); Freebird, 46 Kan. App.2d at 640-44, 264 P.3d at 508-10 (same); see also 4 H. Newberg & A. Conte, Newberg on Class Actions, § 14:6 (4th ed. 2006) (empirical studies show that fee awards in class actions average around one-third of recovery); Plaintiff Class's Memorandum In Support Of Motion For Approval Of Attorney's Fees And Expenses, And Incentive Fee Award (Doc. #199) filed January 15, 2013 at 9 n.6 (compiling cases). The Court therefore approves plaintiff's request for attorney fees in the amount of $2,567,452.59.

### B. Litigation Expenses And Costs

As already noted, class counsel has spent $461,677.73 out of pocket to litigate this case. The Court finds that class counsel is justified in recovering these expenses and costs. See Hershey, 2012 WL 5306260, at *8.

### C. Class Representative Incentive Award

Plaintiff seeks an incentive award of $48,923.45, which is three-fifths of one per cent of the total settlement fund. In a similar royalty underpayment case, the Kansas Court of Appeals recently considered for the first time the propriety and parameters of incentive awards in class actions. See

Freebird, 46 Kan. App.2d at 644, 264 P.3d at 510. In upholding a one per cent incentive award over an objection, the court looked at the following three factors to determine the propriety of the incentive award: (1) the actions the class representative took to protect the interests of the class; (2) the level of benefit that the class received from the class representative's actions; and (3) the quantity of time and effort the class representative spent in pursuing the litigation. Id. at 644-45, 264 P.3d at 510 (citing Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003); In re U.S. Bancorp Litig., 291 F.3d 1035, 1038 (8th Cir. 2002); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Kimberlee Hamilton, the sole owner of Freebird, Inc., devoted more than 1,500 hours to the case over the last five years of litigation. Due in part to her efforts and persistence in bringing this case, class members now get the benefit of a favorable settlement. Moreover, unlike the usual case where the incentive fee is paid out of the common settlement fund, the proposed incentive fee in this case will not reduce the amount available to pay the class because defendant will pay the award in addition to the settlement fund. See Plaintiff Class's Memorandum In Support Of Motion For Approval Of Attorney's Fees And Expenses, And Incentive Fee Award (Doc. #199) at 23. For these reasons, the incentive award that plaintiff requests is appropriate.

**IT IS THEREFORE ORDERED** that Plaintiff Class's Motion For (1) Final Approval Of Class Settlement; (2) Approval Of The Plan Of Allocation; And (3) Approval Of Incentive Fee Award To Class Representative (Doc. #200) filed January 15, 2013 and Plaintiff's Motion For Award Of Attorney's Fees (Doc. #14) filed January 4, 2013 be and hereby are **SUSTAINED**.

Dated this 19th day of March, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge